EVERETT, Judge.
Weldon Wallace Poole, Jr. and Stephanie Ann Arculeer were married on July 12, 1958. Their marriage was dissolved by a judgment of divorce granted September 1, 1965, and the community of acquets and gains, formerly existing between them dissolved on February 19, 1965, the date that the action for the divorce was filed.
A petition for the partition of the property belonging to the former community of acquets and gains was instituted by Stephanie Ann Arculeer and a notary public appointed to inventory that property. A motion to traverse the inventory prepared and filed by the appointed notary was instituted by Weldon Wallace Poole, Jr. In that motion Mr. Poole attacked the assigned status of much of the property inventories, submitting that certain properties were separate, as opposed to community as listed in the inventory.
Stephanie Ann Arculeer joined issue. The motion to traverse was tried with the District Court rendering judgment, decreeing some of the property contained in the inventory to be community and some other property contained in the inventory to be separate, unless the status of the property was otherwise stipulated by the parties. *220 All three parcels of immovable property inventoried by the notary were decreed to be the separate property of Weldon Wallace Poole, Jr.
An appeal was perfected by Stephanie Ann Arculeer and the only matter now for consideration before us is an examination of the judgment of the District Court in assigning the correct status, separate or community to the property originally inventoried.
The record discloses that the status of four categories of property were in dispute and it is deemed appropriate to mention each category of property separately.
There is one share of stock in the Covington Country Club, which was registered in Mr. Poole’s name a few days after the marriage. Mr. Poole summoned his father, Weldon W. Poole, who testified that he was an early patron of the Coving-ton Country Club and purchased several shares in order to help that organization in its infancy. He stated that no compensation was received by him for the share of stock and this was a gratuity intended for his son alone. We feel that the District Court wa.s correct in concluding that this formed a portion of Mr. Poole’s separate property as it is apparent that there was a donation by Mr. Poole’s father to him particularly. LSA-C.C., art. 2334.
There was an account with the Whitney National Bank of New Orleans which was opened on January 28, 1958, before the marriage, in the name of W. Wallace Poole, Jr. Prior to the marriage there were several deposits, totalling $4,850.33. After the marriage the passbook records reflect that there were several notations of interest and, on March 16, 1964, a deposit of $1,300.00. The records further reflect that there was a withdrawal made after marriage. We hold that the District Court was correct in concluding that the portion of the account which was clearly distinguishable as deposits made or interest accrued before July 12, 1958, the date of the marriage, were separate but that any subsequent deposits or any interest accrued on the entire principal would fall into the community. We hold in this case that the funds were not commingled in the account in a manner to cause the deposits made and the interest accrued before the marriage to fall into the community. Succession of Russo, 246 So.2d 26 (La.App. 4th Cir., 1971; writ refused), 258 La. 760, 247 So.2d 861 (1971).
The status of funds on deposit with the Poole Investment Company was also contested; however, we are satisfied after an examination of the record that only the original investment of $9,043.12 made on March 4, 1967 and one-half of a wedding gift from an aunt of Mr. Poole which is still on deposit with the Poole Investment Company is separate property. All remaining funds, principally consisting of revenue from rental property and dividends from stock, must be considered community. LSA-C.C., art. 2338. One-half of the portion deemed community, amounting to $5,204.77, should be paid to Stephanie Ann Arculeer.
This leaves only the immovable property. The status of three tracts of immovable property deserve consideration. We will refer to these as the Prieto Tract, the Frederick Tract and the Blossman Tract, each bearing the surname of the vendor. The Prieto Tract and the Frederick Tract were purchased in the name of W. Wallace Poole, Jr. and John M. Poole and the Blossman Tract was purchased in the name of W. Wallace Poole only. In regard to each tract, W. Wallace Poole, Jr., testified that his father had negotiated the purchase of the property and paid the consideration recited in the Act of Conveyance and that no compensation was ever paid by either himself or his brother. Weldon W. Poole, the father of Mr. Poole, testified with clarity that it was his intention to donate property, a little at a time to his children, in order to avoid estate tax problems. He stated that he did this upon advice from his accountants and that it was his practice *221 to both negotiate the sale of the property and actually pay the consideration recited in the act of conveyance.
 It is significant that none of the acts of conveyance of any of the three tracts have any declaration in them that the property is to be reserved unto W. Wallace Poole, Jr. as his separate property. It is well established that a husband purchasing immovable property during the existence of a marriage must make a declaration in the act of conveyance that the property acquired is to be his separate property and the funds used to purchase are his separate funds. In absence of such a declaration the property is presumed to be community property and this presumption is conclusive. Therefore, this immovable property belongs to the community estate. LSA-C.C. arts. 2334, 2402. Smith v. Smith, 230 La. 509, 89 So.2d 55 (1956). Boulet v. Miguez, 221 So.2d 602 (3rd La.App.1969).
However, since the property was, in fact, purchased with funds given by Weldon Poole, Sr. as a gift to his sons, Wallace Poole, Jr. can claim reimbursement from the community to the extent his separate funds were used in acquiring the property.
In the case of Adkins v. Cason, 170 So. 366 (2nd La.App.1936) it was specifically stated that where property falls into the community and the husband’s separate estate is lessened thereby, then the community has been enriched at the expense of the husband’s separate estate. The court there held that the community was indebted to the husband’s separate estate for funds expended in acquiring land which became a part of the community.
Also, in Gouaux v. Gouaux, 211 So.2d 97 (1st La.App.1968) property was purchased and improvements were made thereon by the husband during the marriage. There was no declaration in the act of sale that the purchased property was intended to be separate. The court found the property to be part of the community but held that the community was indebted to the separate estate of the husband for the amount expended that inured to the benefit of the community.
Therefore, in the instant case it is clear that the community is indebted to Wallace Poole, Jr. for the amount of his separate funds expended in the purchase of the tracts of land.
1. Purchase price of Blossman Tract ... $ 2,500.00
2. One-half purchase price of Prieto Tract 11,500.00
3. One-half purchase price of Frederick Tract . 2,837.50
Total . $16,837.50
All costs to be paid by the appellant.
Affirmed, as amended.